[S. C., Cooke, 211.]
In Equity. — Upon motion to dissolve an injunction, it appeared from the bill and answer that the plaintiff had an entry in the year 1799 on the south side of Cumberland, c. He gave his bond to the defendant to make him a right to 228 acres, on the south side of Cumberland River, adjoining Lytle's claim. The defendant took possession of the land, and about the year 1806 or 1807 made an entry on the same land of an occupant claim. He sued the plaintiff on his bond for a title, and recovered judgment for $1,700. The bill states that the damages are excessive, having received only a small sum for the land; that, owing to the dispute between the State of Tennessee and North Carolina, he never could get a title; and immediately after the power of completing titles was transferred to this State, upon examination his claim proved defective; upon which, and in order to secure to the defendant a title, he re-entered the land with a good warrant, agreeably to law; though the defendant had previously entered the same land, claiming it by virtue of an occupant right. It further states he is now using his endeavors, and expects to obtain a grant shortly, when he will be fully able to comply with his contract, which he is desirous of doing if within his power.
If the plaintiff designed to obtain relief in this court he should have applied in some reasonable time: this he has not done, — suit was brought, trial had, and a new trial, still no application to this court.
Had the plaintiff immediately after being sued applied to this court and offered a title there might have been some ground for the complaint, — we have fairly obtained our judgment, and this court cannot deprive us of the benefit of it. On what ground are they to do it? there is no fraud. We have made it appear that the warrant on which this entry was made has been granted. The entry itself is so vague that it amounts to nothing, Under all these circumstances, how is it possible the plaintiff ever could get a grant so as to enable him to make a title to the defendant? It has been urged that the defendant has been guilty of fraud in entering the land himself when he had previously purchased it; this cannot be the case, — the cases have gone no further than when the purchase was on an apparent legal title. The plaintiff here had not any legal title; and supposing it is argued his entry furnishes such a one, the argument will prove unsound, because the entry was perfectly vague, and had no warrant to support it. Eight years elapsed from the time of giving the bond for title before suit was brought; surely the Court will not compel the defendant to take a title if the plaintiff had one. All that could be required of us, previously to our getting a title ourselves, was to give Searcy notice to procure a title, or we would; this we did do, — we ought not to be at the expense of procuring a title and the plaintiff get the benefit of it. If another individual had got a title before either plaintiff or defendant, he would hold the land, and our client would have to buy it, — we ought to stand in as good a situation as if this were the ease.
It has been insisted that only the consideration paid ought to be refunded. We admit that we have recovered the value of the land; but what has that to do with a covenant for a title? Whatever the land is worth ought to be recovered in damages, and the jury have said it is worth $1,700. *Page 423 
Upon a motion to dissolve, it is not intended to give any decisive opinion, but the impressions now made are clearly against the motion. The plaintiff had an entry, — he sold to the defendant, and the reason given why a title was not procured from North Carolina is satisfactory. The defendant who purchased took possession under it, and no reason can be perceived why he should set up a title of his own, which he acquired at a small expense, and that too after being enabled by the plaintiff, from his occupancy, to acquire this claim. There, is certainly no justice in such a position, particularly under the circumstances of the. defendant not only claiming the benefit of this title, but full damages for the value of the land. Every principle of morality and sound policy seems opposed to such a course. Upon principles of morality, every contract supposes that the parties are to act faithfully, with a view to its completion. Contracts of all kinds create a relation between the parties which should not be violated. Thus in the case of landlords and tenants courts will not permit a tenant to set up a title against a person of whom he has contracted to held. In trusts and all kinds of agencies, trustees and agents are not permitted to act inconsistent with the character they have assumed; they cannot act for themselves respecting the subject of trust or agency, but for the person for whom they have engaged to act.[1] What may be the ultimate determination of the Court, supposing the plaintiff shall get a title and be able to convey to the defendant, he would not undertake to say. One thing he felt well satisfied of, if the defendant acquires one it must be in consistency with his previous purchase of the plaintiff, — it must be as his agent, and in this view, if the Court should be of opinion that it is a good title, they may decree the plaintiff to pay the expenses of acquiring it, and no more. The balance of the judgment, it is more than probable on this principle, will be perpetually enjoined.
[1] 1. Caines, 421, 444, arguendo; 2 Caines' C. E. 192; Ver. 60, 84; 3 Binn. 54; 63; 2 Call, 218; 2 Caines, 218; 6 Johns. 34; 7 Johns. 158.
ORIGINAL NOTE. — At July term of the Supreme Court, 1812, a decree was pronounced in conformity with the principles of the above opinion of the Court; viz., that plaintiffs should pay expenses of procuring a title, and the balance of the judgment enjoined.